# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-70031

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2015

Lyle W. Cayce
Clerk

WILLIAM EARL RAYFORD,

> Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-978

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:*

William Earl Rayford seeks a certificate of appealability ("COA") to obtain appellate review of the district court's denial of his claim, purportedly under *Martinez v. Ryan*, ___ U.S. ___ 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013), that he was not procedurally barred from asserting a claim that his state trial counsel had been ineffective

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70031

for failing to introduce certain hospital, prison, and jail records at trial for broad mitigation purposes. For the reasons set out herein, we DENY his application for a COA.

## I.

### A.    Underlying Crime, Conviction, and Sentence

Rayford was convicted in December 2000 of capital murder and sentenced to death for the 1999 murder of his ex-girlfriend, Carol Hall. On direct appeal, the Texas Court of Criminal Appeals upheld his conviction and sentence.[1] It set out the facts of the crime as follows:

> Appellant was Carol Hall's former boyfriend and had lived with Hall and her children for about three years. A couple of months before the offense, Hall asked appellant to move out and ultimately removed him from her home with the help of her uncle. Hall's twelve-year-old son, Benjamin Thomas, testified that Hall was afraid of appellant. About 6:30 on the morning of the offense, appellant entered Hall's house with a key. Appellant and Hall began to argue about appellant having a key to the house. The argument escalated, and Hall began screaming for Thomas. When Thomas woke up and came out of his room, appellant stabbed him in the back with a knife. Hall fled the house and ran down the street toward her mother's house. Appellant ran after her and caught her before she reached the next house. Hall was wearing her night clothes and was barefooted.
>
> Thomas, who ran from the house after them, saw appellant pick up Hall and throw her over his shoulder. Hall was screaming and beating on appellant as he carried her toward a creek behind the house. Thomas ran to a neighbor's house and called the police. Dwayne Johnson, a bus driver who was parked at the intersection by Hall's house, saw a

---

[1] *Rayford v. State*, 125 S.W.3d 521 (Tex. Crim. App. 2003), *cert. denied*, 543 U.S. 823 (2004).

woman and a man run from Hall's house. Johnson testified for the defense that when the man caught the woman he beat her severely in the head area to the point that she became "lifeless." The man then dragged her behind the house where Johnson could no longer see them.

Police arrived on the scene and began searching for Hall. About an hour later, appellant appeared in Hall's backyard. He was wet and shivering and complaining of an injury to his knee, and he appeared to have grass and blood on his clothes. Appellant was arrested and taken to a hospital for treatment of his injuries. He consented to a search of his person which included giving samples of blood, saliva, and trace evidence.

Hall's body was found shortly thereafter about 300 feet inside a culvert pipe. There was a large blood stain on the concrete wall of the pipe about 150 feet from the entrance. Water was running through the bottom of the pipe. The floor of the pipe, especially where the water was deepest, was covered with broken bottles, glass objects, metal, rocks, sticks, and other debris.

Dallas County Medical Examiner Jennie Duvall testified to Hall's injuries. There was evidence of both ligature and manual strangulation. There were blunt force injuries including blows to the face and scalp and injuries to the knees, upper chest, and shoulder. There were sharp force injuries inflicted by a sharp object such as a knife, including a stab wound on the inside of an elbow. There were also numerous superficial cuts and scrapes about the head and body. The injuries to the head were consistent with striking or slamming against concrete. There were no cuts or other injuries to Hall's feet, suggesting that she was carried through the culvert. Duvall testified that Hall was alive when strangled. The cause of death was determined to be strangulation, with blunt and sharp force injuries. Hall could have died from the strangulation alone, the blunt force injuries to her head alone, or the combination of these injuries. Duvall further testified

that it was her opinion that Hall died in the culvert because the culvert was the most likely surface to have caused the head injuries and no blood was found until some 150 feet inside the culvert. She conceded on cross-examination, however, that Hall could have been strangled anywhere.

Swabs of trace blood taken from appellant's lip, head, and neck matched Hall's DNA. Blood on appellant's shirt matched Hall's DNA. The blood stain on the concrete in the culvert also matched Hall's DNA. The DNA expert testified that the probability of the DNA belonging to someone other than Hall was one in 116 billion.[2]

The jury found Rayford guilty of capital murder. During the punishment phase of the trial, the State introduced evidence of Rayford's risk of future dangerousness, including evidence that he had pleaded guilty to the brutal murder of his wife, Gail Rayford, under somewhat similar circumstances in 1986, as well as his habitual drug use.[3] Dallas Police Officer Thomas Hitt testified for the State concerning the circumstances of the 1986 murder.

In response, the defense offered mitigating evidence regarding his upbringing, his good characteristics, and his lack of propensity for future dangerousness. The defense offered testimony regarding, among other things, Rayford's father's drinking problem, his mother's relationship with a boyfriend who would beat her violently in the presence of her children, and his lack of supervision as a child.

The defense presented the expert testimony of Dr. Gilda Kessner regarding Rayford's future dangerousness. She reviewed more than 1,000 pages of documents and conducted seven interviews with Rayford himself and his friends and family members. Based on her review, she found that his

---

[2] *Id.* at 525-26.
[3] *Id.* at 527.

childhood was troubled and was marked by "multigenerational substance abuse" which was "part of celebration and attainment of daily living in some cases," and that Rayford himself suffered from substance abuse. Dr. Kessner testified that Rayford's growing up without a father figure in witnessing the domestic violence against his mother caused him to suffer later in life, including from depression. She also testified that he had not been a disciplinary problem in the Dallas County jail and that he had a "positive adjustment" during his previous incarceration for killing his wife.

Most relevant to this COA application, Dr. Kessner reviewed the records from Parkland Hospital and records from the Texas Department of Criminal Justice ("TDCJ") pertaining to Rayford's suicide attempt following the 1986 murder of his wife, among other records. Rayford's counsel had attempted to introduce the Parkland Hospital records at trial, but the State objected that the proper predicate had not been laid, and the trial court sustained the objection. Although the records themselves were not admitted, Dr. Kessner testified regarding the contents of those records. She testified that the records showed that Rayford was admitted into the hospital after killing his wife because he had stabbed himself repeatedly, almost amputating his right hand and necessitating the removal of his gallbladder. Based partly on this suicide attempt, which she claimed demonstrated Rayford's remorse, Dr. Kessner concluded that Rayford would not pose a continuing threat or risk of future dangerousness, despite the 1999 murder of Carol Hall.

In December 2000, the jury sentenced Rayford to death, and the Texas Court of Criminal Appeals affirmed in 2003.[4]

---

[4] *Rayford v. State*, 125 S.W.3d 521 (Tex. Crim. App. 2003).

## B.    State Habeas Proceeding

Represented by another attorney, Rayford filed a state habeas petition on March 7, 2003. Among other claims, the state habeas petition raised a number of issues relating to Rayford's trial counsel's failure to introduce the Parkland Hospital medical records relating to his 1986 suicide attempt following the murder of his wife, his TDCJ (prison) records relating to that suicide attempt, and Dallas County jail records relating to his mental health. Rayford's counsel argued that he was "denied his right to individualized sentencing" under the Eighth and Fourteenth Amendments "when the trial court sustained the objection by the prosecution of crucial mitigating evidence, the Parkland Hospital medical records. These records are evidence of Rayford's remorse and acceptance of responsibility." In addition to showing his remorse and acceptance of responsibility with the suicide attempt, Rayford asserted that "[t]hese medical records also document provocation. Gail Rayford [his ex-wife] had pick[ed] up a shotgun five years before and shot William Rayford during an argument."

Rayford claimed that "because the one hundred and nineteen (119) pages of 1986 Parkland Hospital medical records were not in evidence, defense counsel was forced to rely on the inaccurate and incomplete testimony of Officer Hitt, a state punishment phase witness, and Defense Exhibit 3 [Rayford's TDCJ records] to argue remorse as a mitigator . . . ." Rayford's trial counsel had pointed to the fact that Officer Hitt testified that Rayford had stabbed himself in the stomach, causing "seriously deep wounds," had cut both his wrists, sliced his neck, and stabbed himself in the chest before jumping "out a plate glass window." Rayford's habeas counsel argued that Officer Hitt's testimony on Rayford's wounds was vague because he could not recall exactly what had happened in 1986.

No. 14-70031

In connection with the state habeas proceeding, Dr. Kessner attested in an affidavit that if she had been able to testify about the contents of certain Parkland Hospital records, she "would have testified that the documentation showed that that Mr. Rayford was remorseful for the 1986 killing of Gail Rayford, and that his severe, self-inflicted injuries were evidence of his guilt, shame, depression, remorse, and self-perceived need to be punished." She also opined that in her review of Rayford's medical records and police reports following the 1999 murder, Rayford had apparently had a "passive suicide" attempt in which he "allowed others to inflict injury on him, without any resistance, following the death of Carol Hall," which she found to be "consistent with Mr. Rayford's guilt, shame, depression, remorse, and self-perceived need to be punished for the 1999 killing of Carol Hall."

Rayford's state habeas counsel also argued that Rayford's trial counsel had rendered ineffective assistance because he "failed to establish the proper predicate and introduce the Parkland Hospital medical records, which were crucial mitigating evidence of remorse, and/or make [a] proffer of what the evidence would have shown had it been admitted," in violation of his Sixth Amendment rights. His counsel argued that these records showed Rayford's "remorse and acceptance of responsibility." More generally, counsel argued that the failure to introduce the Parkland Hospital medical records opened the door for the prosecutor to comment in closing argument that Rayford's attorney "didn't spend much time on the mitigation question, simply because there is not mitigation in this case."

Rayford's state habeas counsel also argued that Rayford's guilty plea in the 1986 murder of his wife should not have been admitted to enhance his sentence in this case because it was not knowingly, voluntarily, or intelligently made. Specifically, counsel offered the affidavit of Dr. Kessner, in which she opined, "based on a review of the medical records and police records, that Mr.

7

No. 14-70031

Rayford suffered from mental illness at the time of the 1986 and 1999 killings." In addition to his apparent depression, she highlighted the fact that both killings fit within the literature on "abandonment rage," including both his "overkill" and acting "reactively" inherent in both murders and the suicide attempt following the 1986 murder. Dr. Kessner pointed to "the facts of the crime, the medical record notation in the Dallas County jail records of Rayford's mental illness, and the Parkland medical records of Rayford's attempted suicide" as evidence in support.

Rayford's state habeas counsel also argued that, once the State introduced evidence of the 1986 murder, Rayford's trial counsel should have introduced the above cited evidence to argue that Rayford did not have antisocial personality disorder but rather had "a continuing history of mental illness and personality disorder that pre-dated the 1986 killing of Gail Rayford, that continues to the present day." In short, counsel argued, "[t]his information was necessary, crucial and valid mitigating evidence that was not presented to the jury for consideration when deciding between life and death."

The state habeas court rejected all of Rayford's habeas claims. The court noted that Dr. Kessner had reviewed the Parkland Hospital records and TDCJ records relating to the 1986 suicide attempt. Although the Parkland Hospital records were not admitted after the trial court sustained the State's objection, it found, "nevertheless, that the jury heard substantial testimony from Kessner regarding information contained in medical records." It also found that the "TDCJ records twice describing applicant's suicide attempt were received by the jury as Defense Trial Exhibit 3." The court also found that when Officer Hitt had testified regarding Rayford's 1986 suicide attempt, he had "pointedly stated that applicant was not 'fleeing' law enforcement when he jumped out the window," which bolstered Dr. Kessner's mitigating testimony.

8

No. 14-70031

The court found that Rayford's Parkland Hospital records claim was procedurally barred because it could have and should have been raised on direct appeal. In the alternative, the court found that the claim failed on the merits. The court reasoned that Rayford's trial counsel had indeed failed to lay a proper predicate for introducing the Parkland Hospital medical records, which were themselves hearsay, and that the trial court had properly sustained the State's objection. The state habeas court also explained that even if the trial court had erred, Rayford cannot show that the failure to introduce those records harmed him because he "fails to point out any information in the medical records that the jury did not hear about through an alternative means and which was so crucial to the case that the jury's failure to see the actual piece of paper contributed to his punishment":

> 188. The Court finds that the information contained in the medical records was submitted to the jury through the testimony of Kessner, Hitt, and applicant's TDCJ records (Defense Exhibit 3). Even without receiving the hospital records as evidence, the jury knew that, after killing his wife, applicant cut his neck, stabbed himself 17 times in the abdomen (causing bubbling puncture wounds), cut his wrists (nearly amputating his right hand), jumped out of his second story window, and was then transported to the hospital, where he had to have his gall bladder removed. The jury knew that, as a result of this suicide attempt, TDCJ referred him for a psychological exam. The jury also heard Kessner's opinion that applicant would not pose a continuing threat or risk for danger, which was based in part on her review of these hospital records. The jury saw pictures of the window from which applicant had jumped. Officer Hitt, a State's witness, agreed that applicant had some "pretty deep and serious cuts" on his stomach or chest area and was transported to the hospital.
>
> 189. The Court finds nothing in the medical records attached to the writ application that adds any

9

significant information to what the jury heard. In this regard, the medical records present the information in a form that is comparatively incomprehensible to the average non-medical professional.

190. Thus, the Court finds that the jury received the information in a more understandable format and did not lack any information regarding applicant's suicide attempt. (Citations omitted).

The court also found that, "to the extent the hospital records tend to reflect remorse, the Court finds that it is remorse for the murder of his wife in 1986, not for the murder of the victim in this case." It reasoned that the jury could have reasonably concluded that if that earlier remorse had not prevented him from killing Carol Hall in 1999, it "therefore would not prevent him from killing again in the future." Thus, the court concluded that "the exclusion of the hospital records did not harm applicant" and "did not violate applicant's Eighth Amendment right to individualized sentencing."

Similarly, the court found that Rayford's trial counsel's failure to have the Parkland Hospital records admitted did not constitute ineffective assistance of counsel because Rayford failed to prove that there is "no plausible professional reason" for his trial counsel's failure to pursue the admission of the records. The court especially noted that there was a rational explanation for the failure: "The Court finds that trial counsel could have reasonably concluded the jury would not be aided by the 119 pages of technical records and that the information he wanted the jury to know was more easily discernible in the 13 pages of TDCJ records that he used to elicit the suicide information from Dr. Kessner." In the alternative, the court concluded that Rayford had failed to show prejudice because, as set out above, the court found that the jury had already received the information regarding the 1986 suicide attempt in a more intelligible form and, in any event, the earlier suicide

10

No. 14-70031

attempt would not preclude the jury from concluding that Rayford still posed a risk of future danger.

With respect to the admission of evidence concerning the 1986 murder, the court found that Rayford could not collaterally attack the proceeding. Even if he could collaterally attack it, the court concluded, in the alternative, that Rayford had failed to rebut the presumptions that he "was mentally competent, understood the 1986 proceedings, and voluntarily entered his plea of nolo contendere," based on its review of the record from that proceeding.

Concerning his trial counsel's failure to introduce evidence of Rayford's alleged mental illness and the "abandonment rage" theory at trial for the 1999 murder, the court noted that Dr. Kessner had already presented extensive mitigating testimony based on her review of his medical records and interviews with his friends and family, but Rayford himself "refused to allow counsel to develop this line of mitigating evidence because both he and his siblings did not want to bring their mother into the courtroom to malign her past sexual conduct." The court found that the "abandonment rage" evidence that Dr. Kessner discussed in her affidavit (including, as noted above, the facts of the 1986 murder and the Parkland Hospital and Dallas County jail records) would only show a motive for the murders and would not negate *mens rea* or otherwise excuse the killings. Thus, the court concluded that Rayford's trial counsel was not ineffective for introducing this additional evidence.

The state district court also rejected every other claim Rayford asserted for habeas relief. On May 24, 2006, the Texas Court of Criminal Appeals adopted the district court's findings of fact and conclusions of law and entered an order denying habeas relief.[5]

---

[5] *Ex Parte Rayford*, No. WR-63201-01, 2006 WL 1413533 (Tex. Crim. App. May 24, 2006).

11

## C.     Federal Habeas Proceeding

Rayford was appointed new habeas counsel, who filed a federal habeas petition on May 24, 2007, then a first amended federal habeas petition on September 21, 2007. The first amended federal habeas petition set out a number of claims, but only one concerning the failure to introduce records, specifically the Parkland Hospital medical records. The petition claimed that Rayford's trial attorney provided ineffective assistance by failing to establish the proper predicate to get the Parkland Hospital medical records admitted into evidence for the purpose of showing "crucial mitigation evidence of remorse" following the 1986 murder of his wife. It also claimed that the district court's failure to admit the Parkland Hospital medical records violated his Eighth and Fourteenth Amendment rights because they would have demonstrated his remorse after the 1986 murder and provocation because "Gail Rayford had pick[ed] up a shotgun five years before and shot William Rayford during an argument."

The first amended habeas petition referenced certain records in connection with other arguments but did not argue that those records should have been submitted to the jury to show mitigation. For example, it noted that Dr. Kessner had reviewed Rayford's "prior incarceration records, parole/supervision records, Parkland Hospital records from 1986, prior court records, and Salvation Army substance abuse treatment records." It asserted that "[i]ndicators of Mr. Rayford's mental instabilities and suicide attempts were woven throughout the record" and that his attorneys should have investigated those issues more. The petition also argued that "[t]he facts of the 1986 crime, the medical record notation in the Dallas County jail records of Rayford's mental illness, and the Parkland medical records of Rayford's attempted suicide would have put defense counsel on notice of the need to have Mr. Rayford examined by a mental health expert early in the preparation of

the defense case," in connection with the "abandonment rage" theory (i.e., "overkill" and acting "reactively").

Thus, with respect to Rayford's state habeas counsel's alleged failure to introduce mitigating evidence, his first amended federal habeas petition addressed only the Parkland Hospital medical records, and only for the purpose of showing remorse, as well as perhaps to show provocation for the 1986 murder of Gail Rayford.

On July 12, 2011, the magistrate judge issued findings and recommended that Rayford's application for the writ of habeas corpus be denied on all grounds.[6] With respect to the state trial court's refusal to admit the Parkland Hospital medical records regarding Rayford's 1986 suicide attempt into evidence, the magistrate judge observed "that petitioner's medical records, which purportedly contain evidence of his remorsefulness after a different murder, were arguably not mitigating at all. Moreover, the records were excluded because defense counsel failed to lay a proper predicate for their admission into evidence. As petitioner concedes, his lawyer never attempted to introduce the records again."[7] As the state habeas court had found, the district court had not violated Rayford's rights "[b]ecause the medical records were excluded based on the 'evenhanded application' of an evidentiary rule and petitioner was not prevented from proffering or re-urging the evidence."[8]

Next, the magistrate judge examined the two-prong test for ineffective assistance of counsel claims established in *Strickland v. Washington*, 466 U.S. 668 (1984). After noting that it had "already addressed most of the alleged errors which form the basis of petitioner's ineffective assistance of counsel

---

[6] *Rayford v. Thaler*, No. 3-06-CV-0978-B-BD, 2011 WL 7102282 (N.D. Tex. July 12, 2011).

[7] *Id.* at *7.

[8] *Id.* (citing *Byrne v. Butler*, 845 F.2d 501, 517 n.14 (5th Cir. 1988); *Riles v. McCotter*, 799 F.2d 947, 953 (5th Cir. 1986)).

claims,"[9] it focused on the second prong, finding that Rayford was not prejudiced by his trial counsel's failure to introduce the Parkland Hospital medical records:

> Given this testimony, the medical records of petitioner's suicide attempt, which describe his injuries in more detail but primarily document treatment for those injuries over time, would have added very little to the jury's understanding of petitioner's mental state following the 1986 murder. Moreover, to the extent petitioner's suicide attempt shows remorse, it is remorse for the murder of Gail Rayford, his former wife—not remorse for the murder of Carol Hall, the victim in this case. It strains credulity to suggest that the jury would have viewed petitioner in a more favorable light because he showed remorse for a murder committed more than 14 years earlier.[10]

The magistrate judge later noted that Dr. Kessner had "reviewed more than 1,000 pages of documents and interviewed petitioner and seven members of his family" in connection with her mitigating testimony.[11] With respect to the "abandonment rage" issue, the magistrate judge concluded: "None of the documents in petitioner's 1986 case file suggest that he was mentally incompetent. To the contrary, the file contains a psychiatric evaluation indicating that petitioner was fully competent to enter a plea of *nolo contendere* in the murder case."[12] Thus, the magistrate judge rejected on the merits all of Rayford's claims either directly or tangentially related to the Parkland Hospital medical records, the TDCJ records relating to the suicide attempt, or

---

[9] *Id.* at *15.

[10] *Id.* (citations to record omitted).

[11] *Id.* at *17.

[12] *Id.* at *18.

the jail records relating to his alleged mental illness, on substantially the same grounds as the state habeas court had.

### D. Rayford's Objections to Findings and Recommendations and First Petition for COA

While awaiting the magistrate judge's findings and recommendations, Rayford's federal habeas counsel had died, and his current counsel was appointed to replace her. Rayford's objections to the magistrate judge's findings and recommendations now focused heavily on allegedly unheard mitigating evidence, asserting: "During the punishment phase of Rayford's trial, the jury did not hear mitigating evidence contained in medical and prison records. These records detail Rayford's struggle with mental illness and extreme remorse after committing the two murders." For the first time, Rayford argued that trial counsel failed to introduce into evidence documents other than the Parkland Hospital medical records.

The objections detailed the contents of the Parkland Hospital and TDCJ records, before asserting that Dr. Kessner, in her affidavit, "averred that these medical records lead to three distinct conclusions": first, that his 1986 suicide attempt showed that he "was remorseful for the 1986 murder of Gail Rayford. His severe, self-inflicted injuries evidence 'his guilt, shame, depression, remorse and self-perceived need to be punished'"; second, that he struggled with mental illness, based on his TDCJ records and records from the Dallas County jail; and third, that he never received treatment for his alleged mental illness, based on his prison records and unspecified other records. Thus, Rayford argued, the "excluded evidence" should have been admitted, and the magistrate judge erred by finding the trial court's failure to admit the evidence was harmless. Rayford continued:

> The Magistrate Judge has found that Rayford's mitigation claims are not properly preserved because of the failure of state habeas counsel to present

> additional evidence establishing Rayford's mental illness in 1986 and to present evidence showing that Rayford did not impede the mitigation investigation. To date, such failings of state habeas counsel have been unreviewable. However, the Supreme Court currently has taken under advisement two cases which suggest that the court is considering circumstances under which such a claim may be recognized: *Maples v. Thomas*, 131 S. Ct. 1 71 8 (2011), and *Martinez v. Ryan*, No. 10-1001 , __ S. Ct. __, 2011 WL 380903 (June 6, 2011). Therefore Petitioner asks that this Court take this case under advisement and withhold the entry of any order concerning the magistrate's findings of fact and conclusions of law until the Supreme Court has clarified this issue.

In fact, Rayford never argued in his first amended federal habeas petition that his state *habeas* counsel had been ineffective; he did not raise that issue until his objections to the findings and recommendations.[13]

On January 25, 2012, the district court overruled Rayford's objections, accepted the magistrate judge's findings and recommendations, denied Rayford's application for a writ of habeas corpus, and denied a certificate of appealability ("COA").[14] The district court summarized the findings of the magistrate judge and the state habeas court concerning the state trial court's exclusion of the Parkland Hospital medical records and Rayford's ineffective assistance of counsel claim relating to those records, then added:

> The state-court findings are consistent with this Court's own review of those records. In addition, of the approximately 116 pages of medical records, less than half (approximately 49 pages) appear directly

---

[13] His first amended federal habeas petition specified each ineffective assistance claim as relating to trial or direct appellate counsel. The only explicit reference to state habeas counsel was his statement that state habeas counsel retained an expert to analyze the venire, but he did not allege that state habeas counsel provided ineffective assistance in hiring that expert.

[14] *Rayford v. Thaler*, No. 3:06-CV-0978-B, 2012 WL 215321 (N.D. Tex. Jan. 25, 2012).

No. 14-70031

pertinent to Mr. Rayford's injuries sustained in connection with the murder of his wife in June of 1986. The remainder appear to be from different periods in his life and pertain to myriad injuries which may be inadmissible and even prejudicial to the petitioner. Finally, many of the records of other injuries are intermingled with the records from the June 1986 incident, making it more difficult for jurors to keep track of which injuries pertain to which date. Therefore, the state-court findings are entitled to deference and have not been shown incorrect. The state court's adjudication of this claim is neither contrary to nor an unreasonable application of established federal law, nor is it based on an unreasonable determination of fact. The Magistrate Judge's recommendation on this claim is correct. This claim is **DENIED**.[15]

In footnotes 11 and 12, the district court emphasized that it refused to consider claims Rayford had raised for the first time in his objections to the findings and recommendations:

> The claim in the Amended Petition focuses on the Parkland Hospital medical records, as did the state habeas application. To the extent that the Objections attempt to include more records in this claim than are reflected in the petition before this court, leave has not been granted to amend the pleadings to include any matters not exhausted in the state court.[16]

> The claim in the Amended Petition asserts that these medical records show critical evidence of remorse that was not adequately presented elsewhere, as was presented in the state habeas application. To the extent that the Objections attempt to expand the allegation of prejudice, leave has not been granted to

---

[15] *Id.* at *10-11 (footnotes and citations to record omitted).
[16] *Id.* at *10 n.11.

No. 14-70031

amend the pleadings to include any matters not exhausted in the state court.[17]

The district court also rejected Rayford's argument relating to the failure of his state trial counsel to offer the "abandonment rage" theory.[18] Finally, the district court declined to stay the proceedings because, even assuming Rayford had properly asserted a claim in his federal habeas petition based on his state habeas counsel's failure to raise a particular ineffective assistance of counsel claim, no Supreme Court precedent at that time would have allowed him to pursue that claim.

### E.    Remand for *Trevino/Martinez* Determination

Rayford next sought a certificate of appealability from this court solely on the issue of whether "reasonable jurists could conclude that Rayford was denied a constitutional right when the district court failed to review Rayford's timely and specific objections to the magistrate judge's findings and recommendations regarding ineffective assistance of counsel in light of" *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012).

> In *Martinez*, the Supreme Court held that a habeas petitioner may establish cause to excuse a procedural default as to an IATC [ineffective assistance of trial counsel] claim by showing (1) that his state habeas counsel was constitutionally deficient in failing to include the claim in his first state habeas application, and (2) that the underlying IATC claim is "substantial," meaning that it has "some merit."[19]

In early 2012, when Rayford sought a certificate of appealability from the district court's initial denial of habeas relief in this case, it was unclear

---

[17] *Id.* at *10 n.12.

[18] *Id.* at *11-12.

[19] *Newbury v. Stephens*, 756 F.3d 850, 868 (5th Cir. 2014), *cert. denied sub nom. Newbury v. Stephens*, 135 S. Ct. 1197 (2015) (citing *Martinez*, 132 S. Ct. at 1318).

whether or not *Martinez* applied to Texas habeas procedure. Indeed, on June 28, 2012, the Fifth Circuit held in *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012), that *Martinez* did not apply to Texas cases, which would have precluded any procedurally defaulted claim Rayford might have stated regarding his state habeas counsel's alleged ineffective assistance. However, while Rayford's petition for COA was pending, the Supreme Court issued *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013), which "overruled *Ibarra* and held that *Martinez* applies to Texas cases because 'the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal.'"[20]

Because *Trevino* effected a change in the law, we remanded "to the district court for full reconsideration of the Petitioner's ineffective assistance of counsel claim in accordance with both *Trevino* and *Martinez* . . . . If the Petitioner requests it, the district court may in its discretion stay the federal proceeding and permit the Petitioner to present his claim in state court."[21]

On remand, the district court ordered both Rayford and the State to file supplemental briefs on Rayford's purported *Trevino*/*Martinez* claim, including "what procedures and evidentiary development are appropriate to fully reconsider the claim." Both parties did so, and Rayford's brief largely focused on requesting that the district court remand to state court to allow him to exhaust his purported *Trevino*/*Martinez* claim.

On May 13, 2014, the district court entered an order directing Rayford to file additional briefing on his claim because his prior supplemental "briefing d[id] not identify any claims that need further development, or any material

---

[20] *Newbury*, 756 F.3d at 868.
[21] *Rayford v. Stephens*, 552 F. App'x 367, 368 (5th Cir. 2014).

evidence that was not presented to the state court." The district court noted that, on appeal to this court, Rayford had characterized his *Trevino/Martinez* claim as follows: that "trial counsel was ineffective for failing to offer into evidence 'voluminous medical records from Parkland Hospital pertaining to his attempted suicide.'"

The district court observed that in footnotes 11 and 12 of its prior opinion accepting the magistrate judge's findings and recommendations and rejecting Rayford's objections thereto, it specifically found that Rayford's only claim in his first amended federal habeas petition relating to his state trial counsel's failure to introduce certain records concerned the Parkland Hospital medical records and their use as "critical evidence of remorse."[22] It had also explained in those footnotes that those precise issues had already been presented in his state habeas application. The district court emphasized at that time that, "[t]o the extent that the Objections attempt to include more records in this claim than are reflected in the petition before this court" or "to expand the allegation of prejudice, leave has not been granted to amend the pleadings to include any matters not exhausted in the state court."[23]

The district court noted that Rayford's supplemental briefing on his purported *Trevino/Martinez* claim referred to Rayford's objections to the findings and recommendation, not to his first amended federal habeas petition. The district court made it clear that Rayford's counsel had misconstrued the magistrate judge's findings and recommendations:

> Without any citation to the record, Rayford objected that the Recommendation "found that Rayford's mitigation claims are not properly preserved because of the failure of state habeas counsel to present additional evidence establishing Rayford's mental

---

[22] *Rayford v. Thaler*, 2012 WL 215321, at *10 nn.11 and 12.
[23] *Id.*

No. 14-70031

> illness in 1986 and to present evidence showing that Rayford did not impede the mitigation investigation." Rayford did not identify, however, where these findings were made in the Recommendation and this Court has found no such finding. Instead, the Recommendation appears to note the lack of evidence presented by **federal** habeas counsel. [emphasis in original]

Given that the district court could not determine what "newly discovered records" Rayford was referring to or the basis for his purported *Trevino/Martinez* claim in his first amended federal habeas petition, it ordered Rayford to submit an additional supplemental brief to specifically identify "each claim of ineffective assistance of trial counsel that is unexhausted because of the ineffective assistance of your state habeas counsel," as well as to "state whether the claim was within the scope of your pleadings before this Court in 2011, and if so, cite to the specific language in your pleadings that referenced such claim." It also ordered Rayford to "[f]ully identify and describe all evidence in support of any" such claim and, with respect to each claim or item of evidence described, to state whether it had been presented to the state court, "whether state habeas counsel was ineffective in failing to present such claim and/or evidence to the state court," and to fully support each assertion of ineffective assistance.

Rayford filed a 20-page additional brief in response to the district court's order. Approximately three-quarters of the document was composed of block quotes from his objections to the magistrate judge's report and recommendation. At no point did he cite to his first amended federal habeas petition as the basis for his purported *Trevino/Martinez* claim. After considering this additional brief, the district court entered an order on September 22, 2014, declining to stay the federal habeas proceeding, overruling Rayford's objections to the magistrate judge's findings and

recommendations after de novo review, accepting those findings and recommendations once more, and denying Rayford's petition for writ of habeas corpus.

The district court first examined Rayford's additional brief to determine the broadest possible formulation of Rayford's purported *Trevino/Martinez* claim: "Rayford claims that his trial counsel provided ineffective assistance by failing to properly introduce his Parkland hospital, prison and jail medical records as mitigating evidence in the punishment phase of his trial."[24] The district court found that Rayford's newly formulated claim had not been "clearly presented in his original or amended petition" but nevertheless "appears to have been exhausted in the state court."[25] Indeed, in his additional brief, Rayford's counsel acknowledged that his reformulated claim "at first glance . . . appears to present nothing new. The records Rayford now points to were before the state court, and thus this Court . . . ."[26]

Rayford argued that his state habeas counsel rendered ineffective assistance with respect to the Parkland Hospital medical records by seeking to introduce them "for the specific purpose of showing remorse, and the other records for the purpose of showing Rayford's 1986 plea was involuntary; lost by the wayside was the far more significant deficiency. This claim, then, that was once procedurally barred, is now, in the wake of *Trevino*, ripe for consideration."[27] The district court stated that "[t]he 'far more significant deficiency' appears to refer to the ways that the records could support an 'abandonment rage' theory."[28] In essence, the district court found, Rayford was

---

[24] *Rayford v. Stephens*, No. 3:06-CV-0978-B, 2014 WL 4744632, at *2 (N.D. Tex. Sept. 22, 2014) (emphasis in original, citations to record omitted).

[25] *Id.* at *3.

[26] *Id.* (quoting Rayford's additional brief).

[27] *Id.* (quoting Rayford's additional brief).

[28] *Id.*

relying on the same records at issue in the state habeas proceeding but now arguing that those records are relevant for broader purposes.[29] Stated differently:

> Rayford's most recent formulation of the claim attempts to distinguish the claims presented by state habeas counsel in two respects: (1) the Parkland hospital records should have been introduced at trial for a broader mitigation purpose than merely "remorse" and (2) the prison/jail medical records should also have been introduced at trial as mitigating evidence. Although this may distinguish the claim from what Rayford presents to this Court in his amended petition, it does not sufficiently differ from what was presented to the state court to render the claim unexhausted.[30]

Citing footnotes 11 and 12 of its original order denying habeas relief, discussed *supra*, the district court noted that Rayford had failed to identify this claim in his first amended federal habeas petition, which meant he had waived it. The district court found that Rayford had only claimed in his first amended federal habeas petition that the Parkland Hospital medical records should have been admitted into evidence to show remorse.[31]

The district court then pointed out that Rayford's state habeas counsel had argued that the Parkland Hospital medical records showed not only remorse but also "acceptance of responsibility," "provocation" (regarding Gail Rayford's obtaining a shotgun and shooting Rayford five years before her murder), "guilt, shame, depression, . . . and self-perceived need to be punished."[32]

---

[29] *Id.*
[30] *Id.*
[31] *Id.* at *5.
[32] *Id.* (emphasis removed).

> These allegations were made in Rayford's fourth habeas-corpus claim in state court and incorporated by reference into his fifth claim in state court, in which he specifically alleged that trial counsel was ineffective for failing to lay a proper foundation for the admission of these records. Therefore, Rayford's argument that state habeas counsel failed to argue a "broader" mitigation purpose to these records than remorse was incorrect. Although these purposes were drawn from the same records presented to both the federal and state courts, it appears to have been federal habeas counsel-not state habeas counsel-that did not specify in the controlling pleadings such a broader mitigation purpose for these records.[33]

Thus, the district court concluded, Rayford had failed to preserve any federal habeas claim pertaining to the Parkland Hospital medical records beyond their use to show remorse, and even if he had asserted the much broader formulation of that claim in federal court, it was already exhausted in state court, precluding any *Trevino/Martinez* claim on that ground.

With respect to Rayford's claim that the prison (TDCJ) and jail records should have been introduced as mitigating evidence, the district court again noted that Rayford had not asserted a claim in his first amended federal habeas petition based on the failure to introduce those records, as footnotes 11 and 12 of the district court's prior opinion made clear, and the district court refused to allow him to amend. Even if Rayford had asserted a broader claim concerning the prison and jail records in his first amended federal habeas petition, Rayford's state habeas counsel had already exhausted the claim in the state habeas proceeding.[34]

---

[33] *Id.* (citation to record omitted).
[34] 2014 WL 4744632, at *6-7.

No. 14-70031

Specifically, his state habeas counsel had argued that evidence of his 1986 conviction should not have been admitted at all, but assuming it was, the additional records (including the Dallas County jail records) should have been admitted to show Rayford's "history of mental impairment and personality disorders that had their origin in early development. This information was necessary, crucial and valid mitigating evidence . . . ."[35] Although Rayford argued in the state habeas proceeding that the records themselves should have been admitted, his federal habeas counsel never raised that argument in his first amended federal habeas petition.[36] Thus, not only had he waived the broader argument in federal court, but the state court had actually addressed it, again precluding a *Martinez/Trevino* claim.

Considering only the claim actually stated in the first amended federal habeas petition, the district court once again rejected it on the merits, finding that the state habeas court's determination concerning the introduction of the Parkland Medical records for the purpose of showing remorse was entitled to deference under applicable law. The district court again adopted the magistrate judge's findings and recommendations, denied Rayford's petition for a writ of habeas corpus, and denied a COA.

Rayford filed this application for COA, arguing (1) that reasonable jurists could debate whether his purported *Martinez/Trevino* claim had been exhausted in state court and (2) that reasonable jurists could debate whether his claim of ineffective assistance of counsel was unreasonably resolved by the state court.

---

[35] *Id.* at *6 (quoting state habeas petition).
[36] *Id.*

No. 14-70031

## II.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[37] We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."[38] That "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[39]

## III.

Rayford agrees with the district court's formulation of his *Trevino/Martinez* claim: "that his trial counsel provided ineffective assistance by failing to properly introduce his Parkland hospital, prison and jail medical records as mitigating evidence in the punishment phase of his trial."[40]

---

[37] 28 U.S.C. § 2253(c)(1)(A).

[38] *Id.* § 2253(c)(2).

[39] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (some internal quotation marks omitted)).

[40] Remarkably, despite quoting the district court's formulation of his claim with approval in his brief before this court, Rayford's counsel argued for the first time at oral argument that his state trial counsel erred not by failing to introduce certain evidence altogether, but by failing to present and argue the evidence (including evidence actually introduced at trial) *effectively*. Specifically, he contended that Rayford's state trial counsel should have made a distinct presentation of the evidence on the mitigation issue (special issue number 2), but instead had focused on the evidence's value to show lack of future dangerousness (special issue number 1).

"Arguments raised for the first time at oral argument are deemed waived." *Sigala v. Quarterman*, 338 F. App'x 388, 396 (5th Cir. 2009) (citing *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 232 (5th Cir. 2004)). The district court gave Rayford several opportunities to state his claim clearly, and this argument appears nowhere in any pleading before the district court or this court. Accordingly, we deem the claim waived.

Even if Rayford had timely asserted the claim, the record suggests it would not have changed the outcome. The argument assumes that evidence in the punishment phase must relate either to the future dangerousness issue or the mitigation issue, but the jury at Rayford's trial was instructed to "consider all evidence admitted at the guilt or innocence

No. 14-70031

To determine whether a COA should issue, we must "view[] the petitioner's arguments through the lens of the deferential scheme laid out in" the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[41]

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[42]

"This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt. The petitioner carries the burden of proof."[43] Under § 2254(d), the phrase "adjudicated on the merits" (formerly termed a "resolution on the merits") "is a term of art in the habeas context that refers not to the quality of a court's review of claims, but rather to the court's disposition of the case— whether substantive or procedural."[44] The statute is quite strict, and its protection of state court actions broad:

---

stage and the punishment stage of this trial, including evidence of the defendant's background and character and the circumstances of the offense that militate for or mitigate against the imposition of the death penalty." Because Rayford's counsel conceded that the evidence was introduced for the future dangerousness issue, the jury was required to consider it for the mitigation issue as well.

[41] *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000).

[42] 28 U.S.C. § 2254(d).

[43] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotations omitted).

[44] *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

No. 14-70031

By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.[45]

As the Supreme Court explained in *Martinez*:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. The

---

[45] *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (citations omitted).

doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.[46]

Under *Martinez* and *Trevino*, one such exception is that "a habeas petitioner may establish cause to excuse a procedural default as to an IATC claim by showing (1) that his state habeas counsel was constitutionally deficient in failing to include the claim in his first state habeas application, and (2) that the underlying IATC claim is 'substantial,' meaning that it has 'some merit.'"[47]

Rayford's claim here is that his state habeas counsel provided ineffective assistance by failing to assert a claim with respect to the introduction of the Parkland Hospital medical records, prison (TDCJ) records, and jail records for broad mitigation purposes. "Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)."[48] We apply the two-step test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which first requires a defendant to "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[49] Representation is deficient when it falls "below an objective standard of reasonableness."[50] "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

---

[46] 132 S. Ct. at 1316.

[47] *Newbury*, 756 F.3d at 868 (citing *Martinez*, 132 S. Ct. at 1318).

[48] *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010) (citing *Briseno v. Cockrell*, 274 F.3d 204, 206-08 (5th Cir. 2001)).

[49] *Id.* at 687.

[50] *Id.* at 688.

that, under the circumstances, the challenged action might be considered sound trial strategy."[51] In the second step, the defendant is required to prove that his attorney's deficient performance prejudiced his defense.[52]

In the COA context, however, "[o]ur review is also circumscribed by AEDPA's deferential standard, however, making our inquiry different from asking whether defense counsel's performance fell below *Strickland*'s standard. The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[53] "Informed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed. Moreover, a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance."[54]

**IV.**

**A.     Rayford Has Waived Any Claim Not Asserted in His First Amended Federal Habeas Petition, His Preserved Claim Was Exhausted in the State Habeas Proceeding, And No Reasonable Jurist Could Debate The Underlying Claim.**

As the district court repeatedly noted, Rayford failed to assert most of his claim relating to his state trial counsel's failure to introduce the Parkland Hospital medical records, prison records, and jail records in his first amended federal habeas petition. As set out above, the only ineffective assistance of counsel claim in Rayford's first amended federal habeas petition concerning the introduction of records was that his state trial attorney failed to get the Parkland Hospital medical records admitted into evidence for the purpose of

---

[51] *Id.* (internal quotation marks omitted).

[52] *Id.*

[53] *Clark v. Thaler*, 673 F.3d 410, 426 (5th Cir. 2012) (footnotes and internal quotation marks omitted).

[54] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (internal citations and quotation marks omitted).

showing "crucial mitigation evidence of remorse" following the 1986 murder of his wife, as well as perhaps showing provocation because his wife had shot Rayford with a shotgun approximately five years before her murder. The first amended federal habeas petition did not claim that Rayford's trial counsel provided ineffective assistance by failing to introduce any other records, or by failing to introduce the Parkland Hospital medical records for any purpose other than to show remorse or provocation. Rayford only asserted those broader claims for the first time in his objections to the magistrate judge's findings and recommendation.

Rayford's present counsel apparently acknowledges that the broad claim asserted in the objections to the magistrate judge's findings and recommendations was indeed new and exceeded the scope of the first amended federal habeas petition. He noted that the magistrate judge's findings and recommendations concerned "Petitioner's previous federal habeas counsel's claim as to the Parkland records and their evidence of Petitioner's remorse." He stated that Rayford's previous federal habeas counsel "discovered additional mitigating records supporting his claim that his trial counsel was ineffective for failing to introduce mitigating evidence" but decided not to bring the claim in the federal habeas petition because his state habeas counsel had not introduced the documents, and *Martinez* and *Trevino* had not yet been decided. (As we explain below, even under the broadest possible interpretation of his *Martinez*/*Trevino* claim, he has never pointed to any documents that the state habeas court did not already consider.)

Thus, it is clear that Rayford's counsel did not properly raise his purported *Martinez*/*Trevino* claim in his first amended federal habeas petition. Ordinarily, failure to assert a claim until objections to a magistrate judge's findings and recommendations waives that claim because such a claim was

31

"not properly before the district court."[55] "The district court may construe an issue raised for the first time in an objection to a magistrate judge's report and recommendation as a motion to amend complaint," which we review for abuse of discretion.[56] We have found an abuse of discretion where a litigant proceeding pro se had actually demonstrated grounds for relief in the otherwise late claim and where the litigant was actually entitled to an amendment as of right.[57]

Rayford has been represented by counsel throughout the course of this federal habeas proceeding, and his previous counsel made the conscious decision not to assert the claim in the federal habeas petition—unlike, notably, the federal habeas counsel in *Martinez*, who asserted the otherwise procedurally defaulted claim in the federal habeas petition and ultimately got the law changed.[58] Accordingly, we cannot say the district court abused its discretion in refusing to allow Rayford to amend his first amended federal habeas petition to assert a much broader claim.

In this application for COA concerning Rayford's purported *Martinez/Trevino* claim, we must determine whether Rayford's state habeas counsel provided ineffective assistance by failing to claim in that proceeding that Rayford's trial counsel provided ineffective assistance with respect to the introduction of evidence—specifically, the Parkland Hospital medical records for purposes of showing Rayford's remorse. As we set out in Part I.B, *supra*, Rayford's state habeas counsel argued that Rayford was "denied his right to

---

[55] *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996); *Morrison v. Johnson*, 214 F.3d 1350, 2000 WL 634644 (5th Cir. 2000) (table decision).

[56] *Riascos*, 76 F.3d at 94.

[57] *Id.* (pro se litigant with viable, though late, claim); *Morrison*, 214 F.3d at 1350 (finding that the district court abused its discretion because the petitioner was entitled to an appeal as of right because the State had not yet filed a responsive pleading).

[58] 132 S. Ct. at 1314-15.

individualized sentencing" under the Eighth and Fourteenth Amendments "when the trial court sustained the objection by the prosecution of crucial mitigating evidence, the Parkland Hospital medical records. These records or evidence of Rayford's remorse and acceptance of responsibility."

His state habeas counsel claimed that "because the one hundred and nineteen (119) pages of 1986 Parkland Hospital medical records were not in evidence, defense counsel was forced to rely on the inaccurate and incomplete testimony of Officer Hitt, a state punishment phase witness, and Defense Exhibit 3 [Rayford's TDCJ records] to argue remorse as a mitigator . . . ." Dr. Kessner averred by affidavit in the state habeas proceeding that if she had been able to testify about the contents of certain Parkland Hospital records, she "would have testified that the documentation showed that Mr. Rayford was remorseful for the 1986 killing of Gail Rayford, and that his severe, self-inflicted injuries were evidence of his guilt, shame, depression, remorse, and self-perceived need to be punished." His state habeas counsel also argued that his state trial counsel provided ineffective assistance for failing to lay the proper predicate to have the Parkland Hospital medical records introduced.

As also set out in Part I.B, *supra*, the state habeas court rejected all of these arguments on both procedural and, in the alternative, substantive grounds. Rayford's preserved claim concerning the introduction of the Parkland Hospital medical records to show remorse therefore is not *procedurally* defaulted, and the *Martinez/Trevino* rule does not apply. Rather, the claim was "adjudicated on the merits" for purposes of § 2254(d). Therefore, under AEDPA, we may only grant habeas relief if Rayford shows that the state habeas court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

No. 14-70031

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[59]

No reasonable jurist would debate the district court's determination of Rayford's preserved constitutional claim concerning the Parkland Hospital medical records. He has not pointed to a single material error by the state habeas court on any factual or legal determination, much less anything in the decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The cases Rayford cites in his brief virtually all concern a trial counsel's failure to conduct an adequate investigation on mitigating evidence or to introduce any mitigating evidence.[60]

In this appeal, although Rayford's brief suggests that his trial counsel's investigation was somehow deficient, it is beyond question that his trial counsel *did* conduct an investigation and *did* present mitigating evidence. Rayford has never asserted there is any additional mitigating evidence which might have been discovered with further investigation. The crux of his argument is instead that his trial counsel failed to introduce documents which he had already discovered in his investigation.

Concerning the Parkland Hospital medical records specifically, the state habeas court determined that the jury heard the contents of the records in a more intelligible form through the testimony of Dr. Kessner and Officer Hitt,

---

[59] 28 U.S.C. § 2254(d).

[60] *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510 (2003) (counsel failed to conduct an investigation beyond a pre-sentence investigation report and Department of Social Services records, despite facts in those records pointing to further mitigating evidence, and the record suggested that "that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment"); *Rompilla v. Beard*, 545 U.S. 374 (2005) (counsel failed to examine the file on petitioner's prior rape and assault conviction, despite the fact that the state intended to use the prior conviction to seek the death penalty).

34

as well as the TDCJ records introduced as Defense Exhibit 3. Rayford has not shown that the state habeas court's factual determination was unreasonable based on the state habeas record. Rayford also has not cited to any clearly established Supreme Court case law which would warrant relief under these circumstances, where the jury actually heard the evidence at issue in an arguably better form. We can find no basis in law or fact for concluding that the state habeas court erred in its determination under AEDPA's deferential standard.

In short, reasonable jurists could not debate the district court's determination of Rayford's preserved constitutional claim concerning the use of the Parkland Hospital medical records to show remorse. Accordingly, we deny a COA.

### B.  In The Alternative, Even If Rayford Had Preserved His Full Claim, No Reasonable Jurist Could Debate The District Court's Determination That Rayford Is Not Entitled To Habeas Relief.

In the alternative, even if Rayford had not waived his full purported *Martinez/Trevino* claim, no reasonable jurist could debate the district court's determination that he is not entitled to habeas relief. To reiterate, Rayford agrees with the district court's formulation of his claim: "that his trial counsel provided ineffective assistance by failing to properly introduce his Parkland hospital, prison and jail medical records as mitigating evidence in the punishment phase of his trial." As the district court explained, even though this claim was not presented in his first amended federal habeas petition, it was unquestionably adjudicated in his state habeas proceeding.

Specifically, as set out more fully in Part I.B, *supra*, his habeas counsel argued that the Parkland Hospital medical records should have been introduced not only to show remorse, but also to show "acceptance of responsibility," provocation, "guilt, shame, depression . . . , and self-perceived

need to be punished." Thus, his state habeas counsel already argued that the medical records should have been introduced for broad mitigation purposes, just as Rayford argues now.

Rayford's state habeas counsel also argued that once evidence of the 1986 murder had been introduced, his state trial counsel should have introduced his Dallas County jail records and other records for general mitigation purposes to show his history of mental illness. He argued that the evidence showed that Rayford did not have antisocial personality disorder but rather had "a continuing history of mental illness and personality disorder that pre-dated the 1986 killing of Gail Rayford, that continues to the present day," including "abandonment rage." In short, state habeas counsel argued, "[t]his information was necessary, crucial and valid mitigating evidence that was not presented to the jury for consideration when deciding between life and death."

The state habeas court rejected the introduction of the Parkland Hospital medical records and the jail records for all purposes on both procedural and, in the alternative, substantive grounds. It also noted that the TDCJ (prison) records had already been introduced as Defense Exhibit 3. Among the other findings summarized in Part I.B, *supra*, the court found that the jury had heard the information from the Parkland Hospital medical records in a more intelligible form through the testimony of Dr. Kessner, Officer Hitt, and the TDCJ records. The state habeas court found that Rayford had refused to let his counsel argue the "abandonment rage" theory and that, in any event, the "abandonment rage" evidence would not be mitigating.

The fundamental problem with Rayford's purported *Martinez/Trevino* claim is that it is not actually a claim under those cases. Despite ample opportunities to do so before the district court and now in this court, Rayford has never pointed to a single document or theory of mitigation that was not already presented to the state habeas court and adjudicated on the merits

there. The state habeas court fully considered his claim that his trial counsel had provided ineffective assistance by failing to introduce a number of records, including the records at issue here, for broad mitigation purposes. Because the full claim was exhausted in the state habeas proceeding, the *Martinez/Trevino* rule does not apply.

Instead, we must examine the state court's determination under the highly deferential AEDPA framework and must conclude that no reasonable jurist would debate the underlying constitutional claim concerning the introduction of these records for broad mitigation purposes. As explained in Part IV.A, *supra*, the crux of Rayford's claim is not that his trial counsel failed to conduct a reasonable investigation but that his trial counsel failed to introduce certain already discovered records at trial for mitigation purposes.

First, as discussed above, the jury already heard the contents of the Parkland Hospital medical records in a more intelligible form, and no reasonable jurist would debate the district court's determination on that point. The presence of supposedly broader mitigation purposes at issue in Rayford's full purported claim does not change the fact that the jury already heard the substance of those records. Again, Rayford has not shown that the state habeas court made unreasonable fact findings or violated clearly established Supreme Court case law in its decision concerning these medical records.

Second, TDCJ records were actually introduced as Defense Exhibit 3, and Rayford has never explained what additional TDCJ evidence his trial counsel should have admitted. Indeed, he has not set out with specificity any error, much less the type of extraordinary error required to satisfy AEDPA's highly deferential standard. No reasonable jurist would debate the district court's determination with respect to these documents.

Third and finally, Rayford has not detailed in this appeal what mitigating evidence might be found in the Dallas County jail records.

Examining his briefing in other courts, it seems he would rely on those records for evidence of his mental health, particularly in connection with the "abandonment rage" theory which Rayford himself requested that his trial counsel not pursue. However, has never specified the contents of the jail records, or stated precisely what he wishes to show with them. In short, he has failed to allege specifically or coherently any constitutional error with respect to the jail records.

Our examination of the state habeas court's decision concerning those documents and the mental health/"abandonment rage" theory does not reveal any error under AEDPA's highly deferential standard. As the state habeas court reasoned, the "abandonment rage" theory would essentially be double-edged. Indeed, we note that while the theory would offer a *reason* for Rayford's violent rage, it would simultaneously undercut his argument on the future dangerousness issue. As noted above, "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance."[61] Given Rayford's failure to specify any specific error with respect to the jail records and the objectively reasonable nature of his trial counsel's decision not to pursue the "abandonment rage" theory, no reasonable jurist would debate Rayford's underlying constitutional claim on these records under AEDPA.

In sum, we must conclude that even if Rayford had not waived his broad purported *Martinez/Trevino* claim, no reasonable jurist would debate the district court's determination that the claim was exhausted in the state habeas court and did not warrant habeas relief under AEDPA. Accordingly, we deny a COA.

---

[61] *Lamb*, 179 F.3d at 358.

No. 14-70031

## V.

For the reasons set out above, we conclude that, by failing to raise it in his first amended federal habeas petition, Rayford waived any claim of ineffective assistance of counsel based on his state trial counsel's failure to introduce mitigating evidence other than his claim concerning the introduction of Parkland Hospital medical records to show remorse. Even if he had preserved his full purported *Martinez*/*Trevino* claim, however, reasonable jurists could not debate the district court's determination that the entire claim had been exhausted in his state habeas proceeding. Thus, his claim does not fall under the *Martinez*/*Trevino* rule, which applies only when a claim is procedurally barred because state habeas counsel failed to raise it in the state habeas proceeding. Finally, reasonable jurists could not debate the underlying constitutional claim.

Accordingly, we DENY a COA.

39