UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN A. BALTHIS,
            *Plaintiff-Appellant,*

v.                                              No. 00-2022

AIG LIFE INSURANCE COMPANY,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CA-99-135-1)

Argued: January 23, 2001

Decided: March 16, 2001

Before WILLIAMS and MICHAEL, Circuit Judges, and
Claude M. HILTON, Chief United States District Judge
for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished opinion. Chief Judge Hilton wrote the opinion, in which Judge Williams and Judge Michael joined.

---

## COUNSEL

**ARGUED:** James Victor Bates, JAMES V. BATES LAW OFFICE, Bristol, Virginia, for Appellant. William Bradford Stallard, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

HILTON, Chief District Judge:

In this case, the district court granted summary judgment to an ERISA plan after it was sued by the beneficiary of a life insurance policy because the plan excluded coverage due to the decedent's intoxication at the time of death. Finding the exclusion was proper, we affirm the district court.

Gordon Balthis died on December 27, 1997, at his home in Beaufort, North Carolina. His autopsy report stated that the cause of death was "acute ethanol intoxication with aspiration of gastric contents." His blood alcohol concentration at the time of death was 0.16%. The evidence below indicated that the decedent had been drinking with friends, had dinner, and fell asleep on a couch. At some point, he vomited due to over-intoxication and choked to death.

The decedent had a $150,000 life insurance policy which named his brother, John A. Balthis (appellant in this action), as beneficiary. The policy was issued by AIG Life Insurance Co. through Landstar System, the decedent's employer, pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* The decedent's brother filed a timely claim for benefits with AIG. His claim was denied both initially and on internal appeal with AIG. He thereafter brought suit in the United States District Court for the Western District of Virginia.

AIG moved for summary judgment on the basis that the decedent was intoxicated at the time of his death. The beneficiary objected, arguing that his claim should be paid because the decedent's intoxication at death was not related to an illegal activity such as driving while intoxicated. The district court agreed with AIG, found that exclusion was proper because the decedent was intoxicated, and granted summary judgment to AIG. The beneficiary appealed the district court's decision to this Court.

We review the district court's grant of summary judgment *de novo*. *See Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 235 (4th Cir. 1999). The parties discussed below and on appeal the question of whether deference is owed to AIG in its determination of exclusion. AIG argues that the ERISA plan in question gives discretion to the plan administrator to determine which claims are and are not covered. AIG argues that such discretion is entitled to deference. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding that when an ERISA plan gives its administrator discretionary authority to pay or deny a claim, that administrator's decision is entitled to deference). The beneficiary responds that the terms of the ERISA plan do not clearly confer discretion on the plan administrator and therefore AIG is entitled to no deference. Because we conclude, even without according deference, that AIG was correct in excluding coverage because of intoxication, we decline to rule on this question.

The sole substantive issue before the district court was whether the ERISA plan was entitled, as a matter of law, to exclude the decedent's beneficiary's claim for benefits. Whether the beneficiary is entitled to benefits under the policy turns on the question of whether the circumstances of the decedent's death excluded coverage. The relevant portion of the insurance policy states: "The Policy does not cover any loss caused in whole or in part by, or resulting in whole or in part from . . . the Insured Person being legally intoxicated under the applicable law of the jurisdiction where the accident occurred." The parties focus their arguments on the phrase "legally intoxicated" in the exclusionary clause. The beneficiary argues that this phrase means that the exclusion applies only if the decedent was committing an illegal act under the applicable law that involved intoxication. For example, he argues that the beneficiary of a decedent who dies while driving while intoxicated cannot recover because he is "legally intoxicated"—intoxication while performing an act (driving) that together is illegal under the applicable law (DWI). The beneficiary concludes that the exclusion cannot apply to this case because the decedent died while sleeping on a couch. Because "sleeping while intoxicated" is not illegal under North Carolina law, he argues, the policy should cover the loss in this case and the exclusion should not apply.

However, the policy is clear: Where any loss is caused in whole or in part by the insured being legally intoxicated, coverage may be

denied. The phrase "legally intoxicated" simply means that the parties intended to look to the law of whatever state the accident occurred in, rather than set a uniform or precise standard of intoxication. The exclusion directs whoever is interpreting the policy to look to state law to determine what constitutes severe enough intoxication to meet the standard of the exclusionary clause. Because the policy is clear on its face, there is no need—as the beneficiary would have us do—to apply the principle of *contra proferentem*, the construction of an ambiguous contractual provision against the party that drafted it. *See Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir. 1992).

To resolve the dispute in this case, the Court need only determine whether the decedent was intoxicated under the law of North Carolina at the time of his death. There are several sections of the North Carolina General Statutes which discuss intoxication. Under the legal requirements of any of those provisions, the decedent was intoxicated at the time of death. His blood alcohol concentration was 0.16% which was above the legal limit for driving, operating a motorboat, and operating an aircraft. *See* N.C. Gen. Stat. § 20-138.1 (BAC limit for driving is 0.08%); N.C. Gen. Stat. § 75A-10 (BAC limit for operating a motorboat is 0.08%); N.C. Gen. Stat. § 63-27 (BAC limit for operating an aircraft is 0.04%).

In addition, North Carolina's public intoxication statute defines intoxication as, "The condition of a person whose mental or physical functioning is presently substantially impaired as a result of the use of alcohol." N.C. Gen. Stat. § 14-443. The North Carolina Mental Health and Substance Abuse Act of 1985 defines intoxication as, "[T]he condition of an individual whose mental or physical functioning is presently substantially impaired as a result of the use of alcohol or other substance." Under both of these statutes, impairment is the standard for intoxication. There is no question that the decedent—in addition to having a BAC of 0.16%—was impaired because of alcohol. The autopsy report concluded that the decedent died after he choked on his vomit which was caused by alcohol intoxication. In essence he was so impaired at the time of death due to alcohol that he died as a result.

This Court need not determine in this case which of the provisions of North Carolina law applies because under any or all of them, the

decedent was legally intoxicated. The decedent's brother's claim for benefits was therefore properly denied and the district court was correct in granting summary judgment to AIG.

*AFFIRMED*