## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 15-50559

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2016

Lyle W. Cayce
Clerk

ELEANOR CROSE, Individually and as Permanent Guardian of Ronald Crose,

Plaintiff - Appellant

v.

HUMANA INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, PRADO, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Eleanor Crose appeals the district court's summary judgment for Humana Insurance Company on her claims for breach of contract and unfair insurance practices. Because summary judgment was warranted, we AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

On June 23, 2013, while Eleanor Crose attended a concert, her husband Ronald Crose ingested ecstasy. Ms. Crose rejoined her husband at around midnight at a friend's home. When she arrived, Mr. Crose told her that he was nauseated and suffering from diarrhea; he also stated that he had experienced

No. 15-50559

a terrible headache earlier in the evening that felt like "his head was going to explode." Later that night, Mr. and Ms. Crose went on a walk, after which Ms. Crose went to bed and Mr. Crose went to play music.

The next morning, Ms. Crose found her husband lying down in the backyard, non-responsive with his face covered in vomit. Ms. Crose called for an ambulance and told the operator that she believed that Mr. Crose had overdosed. Emergency services transported him to a nearby hospital.

The emergency room doctor who initially treated Mr. Crose, Dr. Bogitch, provided an assessment, stating:

> This is [a] gentleman who unfortunately, with very little past medical history, used [ecstasy] last night and was found down today with a large intraparenchymal hemorrhage with an unusual subarachnoid component as well as an entrapped ventricle and early uncal herniation.

Dr. Bogitch also ordered a urine drug screen, which came back positive for amphetamines (ecstasy), benzodiazepines (a prescription tranquilizer), and cannabinoids (marijuana).

Another physician, Dr. Hinze, examined Mr. Crose; his report stated:

> I suspect that [Mr. Crose's stroke] is due to uncontrolled hypertension likely from his ecstasy ingestion . . . . [Ecstasy ingestion] would account for his diaphoresis, nausea, vomiting, diarrhea and could produce a hypertensive state, which would exacerbate if not initiate his [stroke].

Dr. Hinze's report also noted that Mr. Crose rarely drinks alcohol and has a history of smoking marijuana and taking ecstasy, but using ecstasy was an "unusual event."

At all times relevant to this appeal, Mr. Crose had an individual health insurance policy with Humana. Mr. Crose submitted a claim with Humana under the policy to cover the cost of medical services and treatments provided to Mr. Crose as a result of his stroke. Humana denied the claim, citing the

No. 15-50559

following exclusion in the policy: "**Causation Exclusions . . .** Loss due to being intoxicated or under the influence of any narcotic unless administered on the advice of a *health care practitioner*."

Ms. Crose filed suit claiming breach of contract, unfair insurance practices, and prompt payment violations under the Texas Insurance Code. Humana filed a motion for summary judgment, which the district court granted. Ms. Crose now appeals.

## DISCUSSION

"We review a district court's summary judgment de novo." *Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 247 (5th Cir. 2016). We review the facts in a "light most favorable to the non-moving party." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Summary judgment is appropriate if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 201 (5th Cir. 2014).

### I.

The parties agree that Texas law governs this case. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (citing *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.)), *cert. denied*, 136 S. Ct. 592 (2015). Generally, "for an insurance company to be liable for a breach of its duty to satisfy a claim presented by its

insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcont'l Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997). There is no dispute that the Croses are seeking benefits ordinarily covered by the Humana policy. Because the dispute is instead over the application of an exclusion, the burden shifts to Humana to show that the exclusion applies. *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009). For the exclusion to apply, Humana must show that the term "narcotic" includes ecstasy and that Mr. Crose's stroke was "due to . . . being under the influence" of ecstasy. We begin with the definition of "narcotic."

A.

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Because "narcotic" is not defined by the policy, we are tasked with determining whether the term has "a definite or certain legal meaning." *Texas Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007). In other words, the terms of an insurance policy must be given their plain and ordinary meaning unless there is evidence that the parties intended otherwise. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). But, when a term is susceptible to multiple reasonable interpretations, then it is ambiguous. *See Potomac Ins. Co. of Illinois v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 550-51 (5th Cir. 2000). If ambiguous, the term is to be "construed liberally in favor of the insured and strictly against the insurer." *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984). Because neither the Texas Supreme Court nor the Fifth Circuit has previously defined "narcotic" in insurance contracts, we must make an *Erie* guess to define the term. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 311 (5th Cir. 2010).

No. 15-50559

Ms. Crose contends that the district court erred by finding that "narcotic" is not ambiguous and by rejecting her definitions of "narcotic," derived from federal and state law, as well as pharmacological uses of the term, that she submitted to the district court. Those definitions limit "narcotic" to drugs derived from a plant and classify ecstasy as a "hallucinogen" instead of a "narcotic." Humana counters that Ms. Crose's definitions are technical in nature, and therefore unreasonable. We agree with Humana.

Texas law dictates that the "terms [of an insurance policy be] given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). This means that technical definitions of policy terms are unreasonable unless the policy provides otherwise. *See, e.g., Horn v. State Farm Lloyds*, 703 F.3d 735, 739 (5th Cir. 2012) (accepting the plain meaning of the terms "any" and "cases" and rejecting technical definitions of the terms as unreasonable); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158-59 (Tex. 2003) (rejecting a technical definition of the term "repair" as unreasonable). Concluding otherwise would "ignor[e] the policy['s] language or giv[e] the contract['s] text a meaning never intended." *Schaefer*, 124 S.W.3d at 159 (internal quotations omitted).

The district court found that the ordinary and generally-accepted meaning of narcotic is "[a] drug affecting mood or behaviour [sic] which is sold for non-medical purposes, *esp.* one whose use is prohibited or under strict legal control but which tends nevertheless to be extensively used illegally." Neither party contends that the policy allows technical definitions of the term. Therefore, Ms. Crose's definitions of "narcotic," which are derived from state and federal statutes and pharmacological uses of the term, are unreasonable. The district court did not err when it applied the ordinary meaning of narcotic. *See Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex.

5

No. 15-50559

2009) ("A contract is not ambiguous simply because the parties disagree over its meaning.").[1]

## B.

Having defined "narcotic" to include ecstasy, we must now determine whether Humana met its burden to show that Mr. Crose's stroke was "due to . . . being under the influence" of ecstasy. But first we must decide which theory of causation is derived from the exclusion's use of "due to."

### i.

In *Utica National Insurance Co. v. American Indemnity Co.*, the Texas Supreme Court was tasked with interpreting "due to" in an insurance policy exclusion. 141 S.W.3d 198 (Tex. 2004). The court determined that "due to" is "more than simple cause in fact . . . [and] requires a more direct type of causation." *Id.* at 203. While not specifically assigning a standard, the Texas Supreme Court did distinguish it from the lesser burden of causation derived from the phrase "arise out of" which requires only "but for causation." *Utica*

---

[1] Ms. Crose also argues that the South Carolina Supreme Court's decision defining narcotic to exclude methamphetamine in *Hutchinson v. Liberty Life Insurance Co.*, 743 S.E.2d 827 (S.C. 2013), is persuasive. We reject, however, another court's interpretation of a term if that definition would cause a conflict with the law of the forum state. *See, e.g., Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453, 462 n.8 (5th Cir. 2003). Applying *Hutchinson* to this case requires that we disregard Texas's explicit command to apply the ordinary meaning of an undefined term absent evidence that the parties intended otherwise. Since no such evidence exists, we may not do so.

Nor is *Metropolitan Life Insurance Co. v. Main*, 383 F.2d 952 (5th Cir. 1967), binding or persuasive. In *Main*, the primary issues were whether the insured's death was accidental and whether any disease or mental infirmity contributed to the insured's death. 383 F.2d at 958. As Ms. Crose points out, the *Main* court did state that certain drugs were not narcotics. *Id.* But, this classification of the drugs appears in the opinion's statement of facts and is not relevant to the exclusions being applied. In fact, it is unclear why the panel includes the statement that certain drugs are not narcotics or habit-forming drugs other than to be thorough. Thus, the statement is dicta, and not binding. *See United States v. Lipscomb*, 619 F.3d 474, 481 n.5 (5th Cir. 2010) (King, J. concurring) ("We are free to disregard dicta from prior panel opinions when we find it unpersuasive.").

*National*, 141 S.W.3d at 203 (internal citations and quotations omitted). Therefore "due to" calls for a more direct causal nexus than "but for" causation.

Similarly, in *Likens v. Hartford Life & Accident Insurance Co.*, we determined that an intoxication exclusion in an insurance policy required the insurance company to show that intoxication was a proximate cause of the excluded loss. 688 F.3d 197, 202 (5th Cir. 2012). In that case, the insured's survivors argued that a fall precipitating the insured's death could be attributed to the insured's clumsiness, and that because intoxication could not be proven to be the sole cause of the fall, the exclusion should not apply. *Id.* at 201. We disagreed and interpreted the exclusion, which stated that the policy did not cover injuries "sustained as a result of being legally intoxicated from the use of alcohol" to mean that the insurance company need only show that intoxication was a "significant" or "substantial" cause of the fall, not the *only* cause. *Id.* at 202–03. We noted that because the standard of causation was not precisely defined, we would interpret the phrase "as a result of" to require proximate causation as this interpretation favored the insured. *Id.* at 202.

Reading *Utica National* and *Likens* together, the district court concluded that "due to" should be read as requiring a proximate cause analysis. We agree this is the appropriate standard of causation in this case. Although the Texas Supreme Court has not precisely defined the standard of causation for the term "due to" in an exclusionary clause, *see Utica National*, 141 S.W. 3d at 203, we follow our approach in *Likens* and interpret this phrase in a manner that favors the insured, and hold that "due to" requires a showing of proximate causation.[2]

---

[2] Although the proximate standard of causation was not adopted by the Court of Appeals of Texas in *Seitel Data, Ltd. v. Simmons*, 362 S.W.3d 782, 792 (Tex. App.— Texarkana 2012, no pet.), the court rejected the "tort theory" of proximate causation, which is not at issue in the present case. Rather, we refer to proximate cause in terms of its application within insurance law, where the foreseeability element is not required. *See Stroburg v. Ins. Co. of N. Am.*, 464 S.W.2d 827, 831 (Tex. 1971); 46 Tex. Jur. 3d Ins. Contracts

No. 15-50559

Humana must therefore show that Mr. Crose's use of narcotics was a "significant" or "substantial" cause of his stroke, but not that it was the only cause.[3]

ii.

We now turn to whether Humana met its burden to show that Mr. Crose's stroke was "due to . . . being under the influence" of ecstasy. To meet this burden, Humana must show that the ingestion of ecstasy was a significant cause of Mr. Crose's stroke. We conclude that Humana has done so in several ways.

First, there is ample evidence in the record that ecstasy can lead to a stroke. For example, an expert witness for Ms. Crose stated in his report that ecstasy causes hypertension and that "hypertension is the most common attributable risk factor" associated with strokes. The same report included medical journal articles confirming that a short- and long-term side effect of ecstasy use is hypertension. A second expert report included testimony stating that the "use of ecstasy can increase the odds of suffering an ischemic stroke or intracerebral hemorrhages." Humana's expert also testified and included attachments to his report showing that ecstasy can cause a stroke.[4]

Second, Mr. Crose's medical records strongly suggest that his ingestion of ecstasy contributed to his stroke. The emergency room physician that

---

& Coverage § 776. In addition, the court in *Seitel* was not interpreting an exclusionary provision of an insurance contract, wherein ambiguous terms should be interpreted so as to favor the insured. *See Likens*, 688 F.3d at 202; *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984).

[3] Ms. Crose alternatively argues that Humana has the burden to show that no other cause resulted in Mr. Crose's stroke. This argument, however, necessarily fails because Humana need not show that ecstasy was the sole cause of Mr. Crose's stroke.

[4] Ms. Crose also asserts that Humana failed to carry its burden on causation because it did not submit expert testimony showing that Mr. Crose's stroke was caused by his ecstasy ingestion. Humana's expert report, including attachments showing a causal connection between ecstasy use and strokes, conclusively rebuts this argument.

treated Mr. Crose, Dr. Bogitch, stated in his assessment that Mr. Crose had "very little past medical history" and no family history of strokes. Dr. Bogitch also stated that Mr. Crose had used ecstasy the night before he was admitted, and arrived at the hospital with "a very large . . . hemorrhage." Another physician, Dr. Hinze, "suspect[ed] that [Mr. Crose's stroke was] due to uncontrolled hypertension likely from his ecstasy ingestion . . . [which] would account for his [symptoms] and could produce a hypertensive state, which would exacerbate if not initiate his [stroke]." Mr. Crose's medical records show that an otherwise healthy man, with no medical or family history of strokes, took ecstasy, which led to hypertension and eventually a stroke.

Finally, the temporal proximity between an otherwise healthy man taking ecstasy and then experiencing severe headaches and having a stroke is relevant proof of causation. *See Guevara v. Ferrer*, 247 S.W.3d 662, 667-68 (Tex. 2007). The record therefore results in a clear causal line: 1) ecstasy causes hypertension, 2) hypertension is the leading cause of stroke, 3) Mr. Crose ingested ecstasy, 4) he then presented side effects of hypertension, and 5) shortly after presenting these symptoms, Mr. Crose had a stroke which his doctors noted was caused by hypertension. Because it is undisputed that Mr. Crose used ecstasy prior to his stroke and his medical records show that Mr. Crose had no medical or family history of hypertension or strokes, the ingestion of ecstasy was a significant cause of Mr. Crose's stroke.[5]

---

[5] Humana argues that the Croses waived appeal of their unfair insurance practice claims because they failed to address them in their opening brief. The Croses contend that they are not required to specifically brief the unfair insurance practice claims because they are intertwined with the breach of contract claim. We have consistently held that failure to brief an issue in the opening brief abandons that issue on appeal. *See, e.g., Akuna Matata Invs., Ltd. v. Texas Nom Ltd. P'ship*, 814 F.3d 277, 282 n.6 (5th Cir. 2016); *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000). This rule is applied regardless of whether the claims are intertwined or related. Therefore, given our precedent, the Croses have waived their appeal of the district court's dismissal of the unfair insurance practice claims.

No. 15-50559

## CONCLUSION

The judgment of the district court is AFFIRMED.