# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-70012

JOHN STEVEN GARDNER,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CV-610

Before DENNIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

John Steven Gardner seeks a certificate of appealability (COA) to challenge the denial of his petition for habeas corpus under 28 U.S.C. § 2254 alleging that his trial counsel were ineffective. Because reasonable jurists would not debate the district court's resolution of Gardner's ineffective assistance of trial counsel (IATC) claims, we DENY his application for a COA.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-70012

I.

A Texas jury convicted Gardner of the capital murder of his wife, Tammy Gardner, in the course of committing or attempting to commit burglary or in retaliation for her service or status as a prospective witness in their divorce proceeding. The jury sentenced Gardner to death. The Texas Court of Criminal Appeals affirmed Gardner's conviction and death sentence. *See Gardner v. State*, 306 S.W.3d 274 (Tex. Crim. App. 2009). The Supreme Court denied Gardner's petition for certiorari. *See Gardner v. Texas*, 562 U.S. 850 (2010). Gardner then filed a state petition for a writ of habeas corpus, which was denied. *See Ex parte Gardner*, No. WR-74030-01, 2010 WL 3583072, at *1 (Tex. Crim. App. Sept. 15, 2010). He next filed the instant federal habeas petition, which the district court denied and denied a COA. *See Gardner v. Director, TDCJ-CID*, No. 1:10-CV-610 (E.D. Tex. Mar. 1, 2018). Gardner now seeks a COA from this court.

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal. Federal law requires that he first obtain a COA from a circuit justice or judge." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing 28 U.S.C. § 2253(c)(1)). "A COA may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Id.* (quoting 28 U.S.C. § 2253(c)(2)).

"At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Federal courts cannot grant habeas relief if a claim was adjudicated on the merits in state court unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

2

No. 18-70012

United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).   When, as here, "the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."   *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Gardner claims that reasonable jurists would debate whether his trial counsel was ineffective in (1) failing to present the theory of abandonment rage as a defense during the guilt phase of his trial; (2) failing to develop and present abandonment rage as a consistent theory of the case in both guilt and punishment phases; (3) failing to investigate and develop mitigating evidence for the punishment phase of trial; and (4) failing to get the work product of their mitigation specialist.   The state habeas court and the federal district court rejected these claims.

## II.

To succeed on his ineffective assistance of trial counsel (IATC) claims, Gardner must establish that his counsel's performance (1) was deficient, and (2) resulted in prejudice.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "*Strickland*'s first prong sets a high bar."   *Buck*, 137 S. Ct. at 775.   Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).   Failure to establish either deficient performance or prejudice defeats a petitioner's claim.   *Strickland*, 466 U.S. at 697.   In federal habeas proceedings, a petitioner must also show that "the state court's application of the *Strickland* standard was unreasonable."   *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *see also* 28 U.S.C. § 2254(d)(1).

No. 18-70012

A.

The bulk of Gardner's argument turns on the theory of abandonment rage, a condition that Gardner claims causes men to kill their female companions with excessive force when faced with recent or imminent abandonment. First, Gardner argues that his counsel performed deficiently in failing to present the theory of abandonment rage at the guilt phase of his trial because he claims that the theory "would have allowed [him] to negate the *mens rea* element of capital murder" and negate the enhancement elements of burglary and retaliation.

Trial counsel's strategy during the guilt phase was to challenge the aggravating elements of capital murder—that the murder was committed in the course of either a burglary or retaliation. In preparing for trial, counsel employed a fact investigator, a mitigation specialist, a consulting mental health expert, a testifying mental health expert, and a risk assessment expert. No investigator or expert raised abandonment rage "as an issue or potential trial strategy." Additionally, trial counsel attested in affidavits prepared for the habeas proceedings that even if the experts had raised the theory, counsel would not have relied on the theory at trial because it would have opened the door to evidence of Gardner's prior history of violence, including the murder of his second wife Rhoda and his abuse of his wives Margaret and Sandra.

The state habeas court found that trial counsel were not deficient in failing to argue abandonment rage at trial for several reasons, including that the experts employed by counsel never raised the theory and "counsel's decision to pursue a fact-based rather than psychological defense . . . was a reasoned, strategic choice" based on counsel's experience and knowledge of jurors in Collin County. The court also explained that the theory was not supported by the evidence and noted several pieces of evidence that were not consistent with abandonment rage, as Gardner has a history of

violence unconnected to any abandonment. Further, the court concluded that abandonment rage supplied only psychological context, not legal justification, for Tammy's murder and "did not address the independent aggravating element of murder committed in the course of a burglary, which was sufficient to support the jury's verdict." The district court found that the state habeas court's findings on this claim were not unreasonable. We agree.

"Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment, with the inevitable hindsight that a bad outcome creates, and rule that his performance was substandard for doing so." *Smith v. Cockrell*, 311 F.3d 661, 676-77 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). We have previously found on habeas review that counsel was not deficient in failing to argue that abandonment rage was a mitigating factor because "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." *Rayford v. Stephens*, 622 F. App'x 315, 337 (5th Cir. 2015) (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999)).

Given trial counsel's investigation and reliance on reasonable expert evaluations, Gardner cannot overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance, and counsel's performance was therefore not deficient. *Strickland*, 466 U.S. at 689; *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) (holding counsel is entitled to rely on the opinions of their experts and is not required to "canvass[] the field to find a more favorable defense expert"). Reasonable jurists would not debate the propriety of granting a COA on this issue.

5

No. 18-70012

B.

Second, Gardner argues that his trial counsel were ineffective in failing to develop and present abandonment rage as a consistent theory of the case in both guilt and punishment phases. Counsel pursued separate strategies at the guilt and punishment phases—during the guilt phase, counsel's strategy was to challenge the aggravating elements that elevated the crime to capital murder, namely whether the murder was committed in the course of a burglary or retaliation, while at the punishment phase, counsel challenged the State's claim of future dangerousness and humanized Gardner to the jury. The state habeas court found that counsel's choice of strategies during punishment was a reasoned decision based on the evidence, their investigation, and their experience in practicing criminal law, and though Gardner's attorneys utilized one strategy for guilt and another for sentencing, those strategies were not inconsistent. The district court found that the state habeas court's findings on this claim were not unreasonable. We agree.

As discussed in the previous section, there were numerous weaknesses in Gardner's proposed abandonment rage theory. Counsel was not deficient in declining to present abandonment rage because it was not raised by any of the experts or investigators after a diligent investigation, was unsupported by the evidence, and would have likely permitted the prosecution to elaborate on Gardner's violent history. *See Rayford*, 622 F. App'x at 337. Accordingly, Gardner has failed to raise a substantial claim that counsel's "representation fell below an objective standard of reasonableness" in utilizing different strategies at guilt and punishment instead of relying on abandonment rage in both phases. *See Strickland*, 466 U.S. at 687-88. Reasonable jurists would not debate the propriety of granting a COA on this issue.

No. 18-70012

C.

Third, Gardner argues that his trial counsel were ineffective in failing to investigate and present mitigating evidence for the punishment phase of trial.[1] As for the investigation, Gardner asserts that the interviews were limited to Gardner's parents, his sister, and primarily Gardner himself, and the mitigation specialist "failed to do a diverse investigation and interviews of corroborating witnesses" and "did not adequately investigate [Gardner's] former friends, and other life history informants."  As for presentation, Gardner argues that his counsel were deficient in failing to make a mitigation presentation at the punishment phase because the witnesses that the defense called "provided very limited testimony with no unifying theme that explained why [Gardner] was less morally culpable and not deserving of death."  He argues that new potential witnesses uncovered through his state habeas investigation were familiar with and could have provided evidence relating to his mental health and would have supported a sentence less than death.

The state habeas court analyzed the extent of Gardner's counsel's investigation and determined it was adequate.  The court found that in preparation for trial, Gardner's counsel compiled a team of experts to assist them—a fact investigator, a mitigation specialist, a consulting mental-health expert, a testifying mental-health expert, and a risk-assessment expert. Counsel, the mitigation specialist, and the fact investigator traveled to Mississippi to develop specific mitigation witnesses.  Counsel investigated Gardner's prior childhood accidents, injuries, and illnesses; any history of sexual abuse toward Gardner; any drug or alcohol abuse by Gardner or his

---

[1] He also argues that his other ineffectiveness claims—failing to argue abandonment rage at the guilt phase and failing to present a consistent theory of the case through guilt and punishment—resulted from counsel's inadequate investigation.  Because we determine that the investigation was adequate, we deny a COA on those claims to the extent that they rely on the allegation of insufficient investigation.

family; Gardner's mental health treatment; the cohesiveness of Gardner's family and their living conditions; Gardner's military background; and his memberships in religious, social, educational, and charitable groups. Counsel also attempted to investigate Gardner's school records but could not locate them. Counsel acknowledged that their mitigation specialist was "overly close" with Gardner's family and refused to turn over her notes because she was concerned about what would be discoverable by the State. Counsel's investigation uncovered evidence of Gardner's childhood physical abuse. Gardner's parents denied any abuse and claimed that though Gardner had few friends growing up, he was a "normal kid," which Gardner's attorneys say led to "very little of importance being developed through the time spent with them."[2]

The defense presented the following witnesses at the punishment phase: (1) Bill Miles, Gardner's former co-worker, who testified that Gardner was a diligent, responsible employee and that he believed Gardner had "Christ in his heart"; (2) Kelly Dowdy, Gardner's former co-worker, who worked with Gardner at Wal-Mart and testified that he was a diligent, responsible employee; (3) Juan Sewell, Tammy's ex-husband, who testified that Tammy could be manipulative; and (4) Elaine Holifield, Gardner's sister, who described the death of their sister as a source of stress on the family and described repeated incidents where Gardner was abused by his father and where there was violence between his parents. For example, Holifield testified that Gardner's father, a Baptist preacher, would interrupt a church service to take

---

[2] The state habeas court's "determination of a factual issue [is] presumed to be correct," and Gardner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). He has made no such showing here.

No. 18-70012

Gardner to the fellowship hall to beat him with a belt while the congregants listened.

Gardner's attorneys did not present expert testimony at the punishment phase. After hearing the testimony of some of the State's witnesses, one of the mental health experts hired by counsel "decided she didn't want to testify because of lack of information and [because she] felt that [Gardner] was psychotic."

The state habeas court found that counsel were not deficient in their investigation and presentation of evidence. The court concluded that counsel's investigation uncovered significant harmful information that counsel reasonably concluded did not merit further investigation, including Gardner's prior sexual relationship with a drag queen and his history of violence in his previous relationships. The court credited counsel's affidavit attesting that they thought the information about Gardner's relationship with a drag queen would be more harmful than helpful in the conservative county where Gardner was tried, and that his history of violence in prior relationships would be harmful. The court also concluded that Gardner's parents, who denied any childhood abuse, would not have been helpful had they been called to testify on Gardner's behalf, nor would the mental health expert who believed Gardner was psychotic. The district court found that the state habeas court's findings on this claim were not unreasonable. We agree.

A petitioner alleging ineffective assistance of counsel on the basis of a failure to investigate "must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). The state habeas investigation revealed the following witnesses that Gardner argues his trial counsel should have discovered and presented at the sentencing phase: Sylvia Reeves, Gardner's

former sister-in-law via his third wife Margaret Westmoreland, and her husband Donald "Red" Reeves, both of whom lived with Gardner and could "have revealed the manipulation of his first wife, Rhoda, detailed [his] remorse, and revealed [his] use of codeine in cold medication . . . prior to the shooting" of Rhoda; and Louise Lillis, a former parishioner of the church where Gardner's father was the pastor, who Gardner argues could "have corroborated . . . that [his] father physically abused him" by testifying to "a particularly harsh whipping" she overheard during a church service.[3] The Reeves family had no contact with Gardner after he assaulted Sylvia's niece, Becky, nearly twenty years before trial, and Lillis knew Gardner as a child because she was friends with his parents thirty-five years earlier.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)) (alteration omitted). Counsel's decision not to present cumulative testimony does not constitute ineffective assistance, nor does counsel's failure to present evidence that is more harmful than helpful to the defense. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.

---

[3] Gardner argued to the state habeas court and federal district court that the investigation should have uncovered two additional witnesses: Randy Reeves, the son of Sylvia and Donald who knew Gardner, and Billy Stone, Gardner's friend from when he served in the Army. He presents no argument that the district court erred with respect to its finding that counsel was not deficient for failing to locate and present these witnesses and has therefore abandoned any such argument. *See, e.g.*, *Crose v. Humana Ins. Co.*, 823 F.3d 344, 351 n.5 (5th Cir. 2016) ("We have consistently held that failure to brief an issue in the opening brief abandons that issue on appeal. This rule is applied regardless of whether the claims are intertwined or related." (internal citations omitted)).

1984); *Mitchell v. Epps*, 641 F.3d 134, 143 (5th Cir. 2011) (quoting *Harrington*, 562 U.S. at 789-90).

Gardner's counsel was not ineffective in failing to present these witnesses. Lillis would have presented cumulative testimony already provided by Gardner's sister Elaine, who testified to the harsh whippings Gardner took from his father as a child. As for the Reeveses, they attested that Gardner took Red's gun to shoot Rhoda; that he became "increasingly unstable and treated Margaret [Westmoreland] like she was property"; and that they wanted nothing to do with Gardner after he assaulted Sylvia's niece, Becky. As the state habeas court explained, the Reeveses' affidavits contained "significant harmful evidence that would have been explored by the state had counsel presented their testimony," such as reinforcing the parallels between Rhoda's and Tammy's murders, including Gardner stealing the murder weapon from the person he was living with, showing premeditation and planning in the murders, immediately claiming remorse and crying to family members, and later changing his story about the murders.

Gardner also alleges that counsel's investigation should have uncovered abandonment rage. There is no evidence suggesting that Gardner's counsel conducted less than a reasonable investigation, and we have already explained why the state court's findings on counsel's failure to uncover and present abandonment rage are not unreasonable. *See Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016); *Rayford*, 622 F. App'x at 337. Reasonable jurists would not debate the propriety of granting a COA on this issue.

## D.

Finally, Gardner argues that his trial counsel were ineffective in failing to get the work product of their "recalcitrant mitigation specialist." The mitigation specialist allegedly "developed an overly close relationship with Gardner's family," "refused to share notes from her mitigation investigation[,]

and refused to summarize her findings in a report to the attorneys" because "[s]he was overly concerned with what could be discoverable by the state." Gardner argues that trial counsel were deficient because they did not demand that the specialist turn over her notes or prepare a report.

Under AEDPA, a federal court may not grant habeas relief to a state prisoner unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Gardner argues that this IATC argument was not exhausted in the state habeas court, but this procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).[4] The district court found that Gardner's claim was presented to and adjudicated by the state habeas court and therefore "*Martinez/Trevino* does not apply to this case." We agree with the district court that this claim was adjudicated by the state habeas court and therefore is not procedurally defaulted, and that the state court's determination on the merits of this claim was not unreasonable. *See* 28 U.S.C. § 2254(d)(1).

The Supreme Court has held that to exhaust a claim, a "habeas petitioner must have 'fairly presented' to the state courts the 'substance'" of that claim, and must have "provide[d] the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)). To satisfy the "fairly presented" requirement, "[a] federal court claim must be the 'substantial equivalent' of one presented to

---

[4] In *Martinez*, the Supreme Court held: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. *Trevino* applied this rule to habeas proceedings in Texas, where it is "virtually impossible for an ineffective assistance claim to be presented on direct review." 569 U.S. at 417 (internal quotation marks omitted).

the state courts." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). While "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made," *Anderson*, 459 U.S. at 6 (citations omitted), it is not necessary for the habeas petitioner to "spell out each syllable of the claim before the state court to satisfy the exhaustion requirement." *Whitehead*, 157 F.3d at 387. The question here is whether the state habeas court "had a fair opportunity to consider the . . . claim and to correct that asserted constitutional defect in [Gardner's] conviction." *Picard*, 404 U.S. at 276.

We agree with the district court's conclusion that Gardner fairly presented this claim to the state habeas court. The state habeas petition asserted that counsel were deficient in part because of the close relationship the mitigation specialist developed with Gardner and his family and her refusal to share notes. Gardner himself provides support for the fact that this IATC claim was before the state court, explaining that much of the information presented in support of this claim was presented in the state court and repeatedly citing to the state habeas court record in his brief to the district court.

In addressing the merits of Gardner's IATC claim for failure to adequately investigate and present mitigating evidence, the state habeas court referenced the mitigation specialist's actions, which provides further support for the district court's finding that the question was adjudicated. Gardner does not assert a new claim of IATC that was not raised or adjudicated by the state habeas court so much as he highlights a fact supporting the claim already adjudicated by the state habeas court. This is insufficient to render his claim unexhausted. *See Whitehead*, 157 F.3d at 387; *Vollmer v. Davis*, 673 F. App'x 406, 410 (5th Cir. 2016) ("Greater specificity or better framing of a claim in the federal application as compared to the state petition does not necessarily

render the claim unexhausted."). Thus, we conclude that this claim was exhausted because the court "had a fair opportunity to consider the . . . claim." *Picard*, 404 U.S. at 276. Accordingly, *Martinez*/*Trevino* does not apply. *See Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014) (concluding that "*Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted").

\* \* \*

For the foregoing reasons, Gardner's application for a COA is DENIED.